

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS
## AUSTIN

GROVER SELLERS
ATTORNEY GENERAL

Honorable Weaver H. Baker
Chairman
State Board of Control
Austin, Texas

Dear Sir:

Opinion No. O-6120

Re: Did the Legislature by
repealing Articles 138,
158 and 159, Complete
Texas Statutes, 1920,
thereby extinguish debts
or liabilities thereto-
fore owing to the State
by non-indigent public
patients of the lunatic
asylum?

We have your recent letter requesting our opinion in reference to the above captioned matter, which reads in part as follows:

"We wish to have the opinion of your department on the following matter:

"Statement

"Article 138, Revised Civil Statutes of Texas, 1920, provided 'All public patients not indigent shall be kept and maintained at the expense of the State in the first instance, but in such cases the State shall be entitled to reimbursement * * *'.

"This statute was repealed by the Legislature in 1925 without a saving clause. (Page 414, Section 23, Acts 39th Legislature).

Honorable Weaver H. Baker, p. 2


"Question

"Did the Legislature thereby extinguish debts theretofore owing the State by non-indigent persons?"

Article 138, Complete Texas Statutes, 1920, reads as follows:

"All public patients, not indigent shall be kept and maintained at the expense of the state in the first instance, but in such cases the state shall be entitled to reimbursement in the mode' pointed out in Articles 158 and 159 of this Chapter."

Article 155, Complete Texas Statutes, 1920, provided for the following special issues among others, to-wit:

"(1)  Is A. B., the defendant of unsound mind?

"* * * *

"(6)  Is defendant possessed of any estate, and, if so, of what does it consist and its estimated value?

"(7)  If the defendant is possessed of no estate, are there any persons legally liable for his support?  If yea, name them."

Article 158, Complete Texas Statutes, 1920, provided in substance that if the patient of the asylum has an estate or that there are persons legally liable for the support and maintenance of the lunatic, the county judge may from time to time, upon request of the superintendent of the lunatic asylum cite the guardian or other persons legally liable for his support to appear at some regular term of the county court for civil business to show cause why the State should not have judgment for the amount due it for the support and maintenance of such lunatic.  Article 159, Complete Texas Statutes, 1920, provided in substance that the amount of the judgment provided for in the preceding article should not exceed the sum of $5.00 per week and provided that the certificate of the superintendent of the lunatic asylum as to the amount due shall be sufficient evidence to authorize the court to render judgment.

As stated by you, in your opinion request, Article 138, supra, was repealed by the Legislature in 1925. (House Bill No. 249, Chapter 174, Page 414, General Laws 39th Legislature of 1925). The above mentioned Articles 158 and 159 were also repealed in the same Act. As provided by the articles above mentioned the lunatic's estate or the persons legally liable for his support became legally liable for the lunatic's support and maintenance while in the asylum in a sum not to exceed $5.00 per week. This amount became due and owing to the State, irrespective of whether or not a judgment was actually entered as provided for in said Article 158.

Article III, Section 55 of our State Constitution at the time that the above articles were repealed in 1925, read as follows:

"The Legislature shall have no power to release or extinguish, or to authorise the releasing or extinguishing, in whole or in part, the indebtedness, liability or obligation of any incorporation or individual, to this State, or to any county or other municipal corporation therein."

If an indebtedness, liability or obligation existed by virtue of the State expending money for the support and maintenance of the lunatic, at the time of the repeal of Article 138, supra, then the indebtedness, liability or obligation was not released or extinguished by the Legislature in repealing Article 138, because it was inhibited from so doing by the express terms of Section 55 of Article 3 of our Constitution.

After carefully examining the authorities, we are of the opinion that both an "indebtedness" and "obligation" within the meaning of the language used in Section 55 of Article 3 of our Constitution had been created, and that a "liability" existed cannot even be doubted. In 36 Corpus Juris, p. 1050, the word liability is defined as follows:

"A broad term, of large and most comprehensive significance, whose meaning has been given many times by judicial decisions, as well as by lexicographers. The term has been variously defined as meaning amenability or responsibility to law; legal responsibility; obligation; responsibility; that condition of affairs which gives rise to an obligation to do a particular thing to be enforced by action; the condition of being actually or potentially subject to an obligation; the condition of being responsible for a possible or actual loss, penalty, evil, expense or burden; the

Honorable Weaver H. Baker, p. 4

condition of one who is subject to a charge of duty
which may be judicially enforced; the state of being
bound or obliged in law or justice to do, pay, or
make good something; the state of one who is bound
in law and justice to do something which may be en-
forced by action; the state of being liable; the
state or condition of one who is under obligation to
do at once or at some future time something which may
be enforced by action. In a restricted sense, that
which one is under obligation to pay to another; that
for which one is responsible or liable; that which one
is under obligation to pay, or for which one is liable.
In a broader sense 'liability' means any obligation
one is bound in law or justice to perform, including
every kind of obligation, and almost every character
of hazard or responsibility. It is generally held to
include every kind of legal obligation, responsibility,
or duty, certainly all such as are measured by a money
valuation. Liability may arise from contracts, express
or implied, from duty, imposed by law, or judgment of
the court, or in consequence of torts committed. It
may mean or include burdens imposed by the constitution
or statutes. It may exist without the right of im-
mediate action. A liability may be presently enforce-
able by action, or there may be time given for its per-
formance. By its context the term may be restricted to
cover only a liability founded upon a contract, or
arising out of the breach of the contract.

"A liability may be absolute or contingent.
'Liability' is not restricted to such as are absolute,
or exclude the idea of contingency. In fact, it is
more frequently used in the latter sense that in the
former. It may comprehend future contingencies.

"While 'liability' may include debts or indebted-
ness, it is not generally limited to such terms. It
is broader. 'Liability' is largely a correlative term,
although, ordinarily, it means an obligation which may
or may not ripen into a debt; and includes in addition
existing obligations which may or may not in the future
eventuate in an indebtedness. In a special sense it
is used to denote inchoate, future, unascertained, or
imperfect obligations, as opposed to debts, the essence
of which is that they are ascertained and certain."

Honorable Weaver H. Baker, p. 5

"'Liability' is a term of broader significance than 'debt'. 'Liability' is responsibility." Words & Phrases, Vol. 25, p. 41, citing Joslin vs. N.J. Car Spring Co., 36 N.J.L. 141.

"'Liability' is defined to be a state of being bound or obliged in law or justice. It signifies that condition of affairs which gives rise to an obligation to do a certain particular thing, to be enforced by action." Words & Phrases, Vol. 25, p. 41.

"We know of no definition of the word 'liability', either given in the dictionaries or as used in the common speech of men, which restricts it to such as are absolute, or excludes the idea of contingency. In fact, it is more frequently used in the latter sense than in the former, * * *." Words & Phrases, Vol. 25, p. 43, citing Reconstruction Finance Corporation vs. Gossett, Tex. 111 S.W. (2d) 1066.

Black's Law Dictionary defines the word liability as follows:

"Exposed or subject to a given contingency, risk, or casualty, which is more or less probable."

In Rapalje's Law Dictionary, it is stated that "'liability' is the condition of being actually or potentially subject to an obligation; is used either generally, as including every kind of obligation, or in the more special sense to denote inchoate, future, unascertained, or imperfect obligations, as opposed to 'debts', the essence of which is that they are ascertained and certain."

"Obligation of an estate of an insane person to pay for his maintenance in a state hospital prior to date of Chapter 132 of the Act of 1935 repealing the state's right of recovery under prior statutes was a 'liability' within Section 1-307 of Burns Ann. Stat., providing that repeal of any statute cannot extinguish any liability incurred thereunder." Words & Phrases, Vol. 25, p. 9; 1944 Cumulative Annual Pocket Part, citing State ex rel Milligan vs. Ritter's Estate, Ind., 48 N.E. (2d) 993.

Honorable Weaver H. Baker, p. 6

The Legislature cannot extinguish or release a liability to the State by repealing the statute under which the liability arose. State vs. Pioneer Oil & Refining Co. (Com. of App.) 292, S.W. 869.

The Court of Civil Appeals in 1927, after Article 138 had been repealed in 1925, and in affirming the judgment of the lower court in awarding judgment for the State against G. W. Lokey, as guardian of the estate of John Sansom, a lunatic, for the lunatic's support and maintenance while in the asylum, used the following significant language:

"Article 137, supra, reads:

'All indigent public patients shall be kept and maintained at the expense of the State.'

"Article 138, supra, reads:

'All public patients not indigent shall be kept and maintained at the expense of the state in the first instance, but in such cases the state shall be entitled to reimbursement in the mode pointed out in articles 138 and 159 of this chapter.'

"These statutes were in force at the time of the admission of the patient as an inmate of the said hospital, and fixed his status in reference to whether he was admitted as an indigent patient, to be kept and maintained at the expense of the state, or as a patient to be kept and maintained at the expense of the state in the first instance, but the state to be reimbursed out of his estate. Under the undisputed evidence appellant's ward, Sansom, had the status of the latter class. In fact, article 138 above quoted has the force and effect of an express contract by the state with appellant, as guardian of the patient, that the state will admit him in said hospital as a public patient, but, for the expense incurred of keeping and maintaining him, the state must be reimbursed from his estate, in so far as same may be able to respond thereto. As appellant's ward has been kept and maintained at the expense of the state from the time he was admitted until the trial of this case, and there has been no reimbursement of this expense, it is clear that an obligation for such reimbursement, to the extent of the ability of the ward's estate to respond, has been created in favor of the state, and appellant, as guardian of such estate, is liable therefor to the extent that the estate is capable of re-

Honorable Weaver H. Baker, p. 7

sponding.

"(2)  Articles 158 and 159, supra, point out
a procedure designed to enforce, from time to time,
collection of the debt due the state by reason of
this obligation, as it arose, during the confine-
ment of the patient in said hospital.  This pro-
cedure was not followed by the state in this suit;
it being an action brought in the ordinary form to
enforce payment of a debt.  Is the said statutory
procedure exclusive of any other procedure to es-
tablish this debt and enforce its payment?  We think
not.  The effect of the statutes designating said
procedure is only to point out a remedy for the debt
created, and it does not follow that the remedy pre-
scribed created the debt.  The debt arose because of
the services bestowed for the benefit of the patient,
who was not indigent.  We therefore conclude that the
remedy given by said articles of the statute is only
cumulative of the remedy that theretofore existed for
the establishment and collection of debts.  This pre-
cise question has been so decided by the Court of Civil
Appeals for the Fourth Supreme Judicial District.
Luder vs. State, 152 S. W. 220." (Emphasis ours).

It has always been the policy of this State, for the
State to be reimbursed for the care and maintenance of non-
indigent patients in our State asylums.

Section 54, Article 16 of the Constitution reads as
follows:

"It shall be the duty of the Legislature
to provide for the custody and the maintenance of
indigent lunatics, at the expense of the state,
under such regulations and restrictions as the
Legislature may prescribe." (Emphasis ours).

Under the rule of exclusion, it would seem that the
Constitution itself would inhibit the Legislature from providing
for the custody and maintenance of non-indigent lunatics at the
expense of the State.  See also Act of February 5, 1858, p. 117,
P. D. 125; Acts of August 15, 1876, p. 139; Acts of 1883, p. 105;
Acts of 1895, p. 164; Act  of 1903, p. 110. It will be observed from
examining these Acts that the State has always adhered to

Honorable Weaver H. Baker, p. 8

the policy of the State's reimbursement for the care and maintenance of non-indigent lunatic patients.

In the same Acts passed in 1925 that repealed Articles 138, 158 and 159, provision was made for the reimbursement to the State for money expended in the support and maintenance of non-indigent patients. (House Bill No. 249, Chapter 174, p. 414, General Law of 39th Legislature, 1925). Even though the constitutional inhibition had not existed, under our rules of statutory construction, it is doubtful if the 1925 Act was intended and designed to strike down an accrued liability for the care and maintenance of non-indigent patients. It is true that there is an express repeal of Articles 138, 158 and 159, but it is also true that in the same Act there is no departure from the policy of reimbursement for the care of non-indigent patients, and no indication of an intention to abolish the State's right to reimbursement. Articles 138, 158 and 159 were substantially re-enacted. It merely changed the statutory remedy for collection. It has long been settled in this State, as well as in other jurisdictions, that it does not require an express saving clause to prevent the destruction of rights existing under former statutes. If the intention to preserve and continue such rights is clearly apparent, it will be carried into effect. Gorley vs. Sewell 77 Ind. 316. Fullerton vs. Spring (Sup. Ct.) 3 Wis. 667.

The Supreme Court of Indiana in 1943, in the case of State vs. Ritter's Estate, 48 N. E. (2d) 993, under the same fact situation as presented to us, and with a repealed statute which provided for reimbursement to the State from the lunatic's estate, held that the obligation of the estate to reimburse the State was a "liability", and that the repeal thereof did not extinguish such liability.

The above authorities lead us to the inescapable conclusion that the repealing of said Articles 138, 158 and 159 did not and could not extinguish the liabilities theretofore owing the State by non-indigent public patients by reason of their support and maintenance while in the lunatic asylum and that said indebtedness or liability is such an obligation due the State as may be enforced in any court of competent jurisdiction.

In arriving at the above conclusion, we were not unmind-

ful of the decision of the Court of Civil Appeals in the case of Wiseman vs. State, 94 S. W. (2d), 265 in which the Supreme Court refused a writ of error. It is true that in this case, under an exact fact situation as we have now under discussion, the court held that the State of Texas was not entitled to recover against W. R. Wiseman, guardian of the estate of Charles E. Allen, non compos mentis, for money expended for the care and support of said lunatic while confined in the asylum before the repeal of said Articles 138, 158 and 159. The court based its holding upon the ground that the State's right to reimbursement did not exist under the common law and only existed by virtue of Article 138, which had been repealed. We examined the application for a writ of error in this case to the Supreme Court and find that the question of the right of the Legislature to extinguish liabilities to the State, as inhibited by said Section 55 of Article 3 of our Constitution, was not raised. If this section of our Constitution had been brought to the court's attention, we are firmly of the opinion that the court would have affirmed the judgment of the lower court in awarding judgment in favor of the State. It is the rule in this state that a decision is not to be considered a precedent where the court in rendering its opinion did so without reference to, or consideration of, a statute or constitutional provision in question.

> "Cases decided without reference to, or consideration of statute, were not 'precedents' on construction of statute within rule of stare decisis so as to require that they be followed until overruled." Words & Phrases, Vol. 33, p. 248. Citing Aetna Insurance Company vs. Commander, 153 So. 877, 169 Miss. 847.

> "'Precedents' are decisions of courts of last resort upon the substantive issues before the court which are considered by the court, and decided by the court as such, and immaterial descriptives which do not affect the question considered, or the result reached, have no force as 'precedents.'" Words & Phrases, Vol. 33, p. 248 citing Warren vs. State, 94 S. W. (2d) 430, 130 Tex. Crim. Rep. 448.

> "Where a certain point of law is not brought to the view of the court in determining a cause, the

Honorable Weaver H. Baker, p. 10

decision is not a precedent, calling for the same decision in a similar case in which the point is brought before the court." Words & Phrases, Vol. 33, p. 248 citing The Edward, 14 U.S. (1 Wheat) 261, 276, 4 L. Ed. 86.

"A 'precedent' means that a principle of law actually presented to a court of authority for consideration and determination has, after due consideration, been declared to serve as a rule for future guidance in the same or analogous cases, but matters which merely lurk in the record and are not directly advanced or expressly decided are not precedents." Words & Phrases, Vol. 33, p. 43, 1944 Cumulative Annual Pocket Part, citing Empire Square Realty Co. vs. Chase National Bank of City of New York, 43 N. Y. S. (2d) 470.

"Questions which merely lurk in the record, and are neither brought to the attention of the court nor ruled upon, should not be considered as having been so decided as to constitute precedents." Sehram vs. Robertson, 111 Fed. 2d, 722. Cargilés vs. Gleavy, D.C. Mass., 45 F. Supp. 721.

This Wiseman case only held that the right of the State to reimbursement in such cases did not exist at common law and expressly refrained from passing upon the question of whether the statutory remedy was exclusive. Both the Luders and Lokey cases, supra, expressly held that the statutory remedy need not be pursued and that the State would have the right to go into any court of competent jurisdiction and prosecute a suit as for debt.

Our conclusions above expressed are strengthened by the Wiseman case in that the court in its opinion upon two separate occasions stated that the right of the State to reimbursement constituted a _liability_ to the State.

Trusting that the above and foregoing fully answers your inquiry, we are

Very truly yours

ATTORNEY GENERAL OF TEXAS

By _W. V. Geppert_

W. V. Geppert
Assistant

WVG:BBH